## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

I, Steven Galbadis, being duly sworn, state under oath:

### Introduction and Agent Background

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am also an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I am a Special Agent with the U.S. Drug Enforcement Administration ("DEA"), currently assigned to the DEA Portsmouth, New Hampshire Tactical Diversion Squad ("TDS"). I have been a Special Agent with DEA since 1997.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4. As a result of my training and experience, I am familiar with the methods, routines,

and practices of individuals involved in the use, sale, and trafficking of narcotics. I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver, and dispense, import, and export, and use controlled substances such as heroin, cocaine, marijuana, prescription medication, and others.

5. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, state, national and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute drugs and the proceeds of drug trafficking. I am familiar with the manner in which drug traffickers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses."

6. As a result of my training and experience, I am familiar with the manner in which drug traffickers use telephones; coded, veiled, or slang-filled telephone conversations; electronic text messages; and other means to facilitate their illegal activities. I am also familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise conversations and operations. Based on my training and experience, I am familiar with the methods of operation used by drug traffickers, including the use of cellular telephones to conduct their drug trafficking activities. More broadly, based upon my training and experience, tracking the location of drug traffickers frequently leads to evidence of drug and money laundering offenses, including, but not limited to: (a) the identification of potential criminal associates, such as criminal co-conspirators, suppliers of illegal drugs, and money launderers; (b) the identification

of physical locations at which illegal drugs are offloaded, stored, and/or distributed, including residences, businesses, commercial storage facilities, warehouses, and ports; and/or (c) the identification of locations where drug proceeds are stored, deposited, concealed, used in monetary and financial transactions, and laundered, including private businesses, banks, wire-remitter businesses, and other financial institutions.

7. The facts in this affidavit come from my personal observations and information obtained from other agents, investigators, and witnesses. My interpretations of conversations, conduct, and events detailed herein are based on my training and experience and knowledge of the investigation. This affidavit is intended to show that there is probable cause for the requested complaint and does not set forth all of my knowledge about this matter. All times herein are approximate.

## Purpose of Affidavit

8. I submit this affidavit in support of a criminal complaint charging Alexis Radhames DIAZ TEJEDA with conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846.

## PROBABLE CAUSE

**Background of Investigation**

9. The DEA Tactical Diversion Squad based in Portsmouth, NH (the "Portsmouth TDS") has been investigating the drug trafficking and money laundering activities of DIAZ TEJEDA and others since October 2021.

10. In or about early March 2022, a cooperating source working with the DEA (the "CS") provided information about an individual located in the Dominican Republic known as "Francis" who could supply fentanyl pills in the Boston area. The CS was in direct contact with

"Francis." The CS has a 2016 arrest for narcotics trafficking and a 2018 arrest for narcotics trafficking. The CS was deported in 2018 and later illegally reentered the United States. On or about February 2, 2022, the Department of Homeland Security issued a notice of deferred action for the CS. In April 2022, the CS was arrested during a traffic stop on outstanding warrants from 2016 and 2018. The CS was briefly incarcerated and then released on bond. The CS is cooperating in the hope of receiving immigration benefits and favorable treatment with respect to charging decisions. Based on information provided in this investigation, the CS is believed to be reliable.

**Controlled Purchase of Narcotics from DIAZ TEJEDA on March 7, 2022**

11. On March 2, 2022, investigators instructed the CS to contact "Francis" via the encrypted mobile platform WhatsApp. The CS tried calling "Francis" and also wrote him a text message that read, "I need something."[1] Later that day, "Francis" responded by sending the CS an audio file in which he stated in relevant part that "the pills are cash," and asked "which ones" the CS was asking about ("the cheap ones or the expensive ones"). "Francis" further stated that he could get the CS "the ones they're making there."[2]

12. On March 3, 2022, the CS informed investigators that he/she had received another audio file from "Francis" in which the latter stated that he wanted the CS to meet "Francis's" associate. "Francis" provided an address of 324 Blue Hill Avenue in Boston.

13. On March 6, 2022, at 8:39 p.m., "Francis" provided the CS with a contact for

---

[1] Most quotations cited in this Affidavit refer to communications that were in Spanish and have been unofficially translated for present purposes.

[2] The calls and text-message communications described in this Affidavit were consensually recorded and preserved, respectively, unless otherwise indicated.

4

"Francis's" associate.  "Francis" provided the CS the name "Alexi" and the Massachusetts phone number 857-654-0214 (the "0214 phone").

14. On March 6, 2022, investigators instructed the CS to contact "Alexi" via WhatsApp on the 0214 phone and make arrangements to meet in Boston the following day, March 7, at approximately 1:00 p.m.  The CS did so.

15. On March 7, 2022, at approximately 12:30 p.m., investigators met with the CS at a neutral location and searched his/her vehicle for contraband without finding any.  Investigators instructed the CS to call "Alexi" on the 0214 phone and say the CS would be late, which the CS did.  The CS was outfitted with audio- and video-recording equipment.  Investigators instructed him/her to drive to 324 Blue Hill Avenue to meet with "Alexi."

16. At approximately 1:31 p.m., investigators saw the CS park in front of 324 Blue Hill Avenue and approach the building.  The building where 324 Blue Hill Avenue is located has two doors, one marked "322" and the other marked "324."  The building is mixed-use, with stores below and apartments above, as shown:



17.     The door marked "322" is to the left, and the door marked "324" is to the right.

18.     As the CS approached, investigators saw a Hispanic male, later identified as DIAZ TEJEDA (a/k/a "Alexi"), emerge from the door marked "322" and greet the CS.  In my training and experience, drug traffickers commonly give out a street address that differs slightly from the true address in an effort to avoid detection by law enforcement.  DIAZ TEJEDA and the CS entered the door marked "322" together.

19.     As the video-recording equipment worn by the CS shows, and as the CS later confirmed to investigators in debriefing, the CS followed DIAZ TEJEDA up some stairs and into a second-floor apartment.   A second, younger, male was also present in the apartment.  While inside the apartment, DIAZ TEJEDA—whose face is shown in the video—gave the CS a small clear plastic bag of blue-colored pills.  DIAZ TEJEDA told the CS that the pills cost $6 each (subsequently lowered to $5 each) and that he could deliver additional pills to the CS in Lawrence.  The CS later provided the bag to investigators, who determined it consisted of approximately 30 blue pills stamped "M" and "30" (half of them light-blue and half of them dark-blue).  The pills (depicted below) field-tested positive for the presence of fentanyl.



**Controlled Purchase of 1,000 Suspected Fentanyl Pills from DIAZ TEJEDA on June 1, 2022**

20.     On May 31, 2022, investigators instructed the CS to contact "Francis" via WhatsApp.  The CS did so, and in a recorded call informed "Francis" that s/he wanted to buy 1,000 pills on the following day, June 1 (the CS said, "I think he is going to want 1,000 of those little pills.  You know I'll let you know, I'll let you know a day before, like always, you hear?"). "Francis" told the CS he would call back later to confirm ("Alright let me know a day before so I can talk to this guy.").  The CS later received a preserved communication from "Francis" that said, in relevant part, "buddy, it's confirmed.  Just send the address so the guy can go there." "Francis" confirmed that the deal would happen at 1:00 p.m. the next day at Pollo Tipico restaurant, located at 190 Lawrence Street in Lawrence.

21.     On June 1, 2022, at approximately 12:05 p.m., investigators conducting surveillance at 322 Blue Hill Avenue saw a gray 2017 Acura MDX SUV, bearing Massachusetts registration 9YX732 (the "Acura") pull up to 322 Blue Hill Avenue and saw DIAZ TEJEDA exit

the Acura. The Acura is registered to Luz DIAZ, 231 Quincy St., Apt. 6, Dorchester, MA. 231 Quincy Street is located approximately one block from 322 Blue Hill Avenue. As investigators watched, after exiting the Acura, DIAZ TEJEDA walked into 322 Blue Hill Avenue. A short time later investigators saw DIAZ TEJEDA exit 322 Blue Hill Avenue; he appeared to be holding something under his jacket. DIAZ TEJEDA then entered the Acura again, sitting in the front passenger seat. After briefly losing sight of the Acura, investigators followed it to the Stop & Shop gas station located at the South Bay shopping center. A woman who resembled the license photograph of Luz DIAZ, to whom the Acura is registered, appeared to be driving. DIAZ TEJEDA pumped gas into the Acura. Investigators then followed the Acura to Pollo Tipico.

22. At approximately 12:20 p.m., investigators met with the CS at a neutral location and searched him/her for contraband without finding any. Investigators equipped the CS with audio- and video-recording devices and gave him/her $4,500 in official authorized funds (intending to pay for all but $500 worth of pills). The CS placed the $4,500 in a white paper bag, which s/he put on the floor of the front passenger seat. Investigators instructed the CS to drive to Pollo Tipico restaurant.

23. At approximately 1:05 p.m., the Acura arrived at Pollo Tipico. A short time later, the CS arrived in front of the restaurant. Investigators then watched, and video surveillance shows, DIAZ TEJEDA walk down the street and enter the CS's vehicle on the front passenger side. The CS then made a short drive around several blocks with DIAZ TEJEDA in the front passenger seat.

24. Once inside, the video showed (and debriefing with the CS confirmed) that DIAZ TEJEDA reached into his pants and pulled out an item that he set down next to the CS. The video then showed (and the CS confirmed) DIAZ TEJEDA reach down and manipulate the area of the

white bag with the $4,500. The sound of money being counted can be heard as DIAZ TEJEDA is reaching down.

25.     At approximately 1:14 p.m., investigators saw the CS's vehicle arrive back at Pollo Tipico, where DIAZ TEJEDA exited. As can be seen in the video, DIAZ TEJEDA was carrying the white paper bag with the $4,500 when he left the CS's car.

26.     Investigators met with the CS at a neutral location. The CS handed over the item he received from DIAZ TEJEDA. The item consisted of a large clear plastic bag with twenty small clear plastic bags inside. Inside each of the small bags was approximately fifty light-blue pills stamped "M" and "30," for a total of one thousand pills. In my training and experience, the pills (depicted below) were consistent in appearance with the sample the CS received on March 7, 2022. The pills together weighed approximately 152 grams and have been sent to the laboratory for testing. Based on my training and experience and the investigation to date, I believe the pills likely contain fentanyl.



27. Investigators followed the Acura. The Acura returned to 322 Blue Hill Avenue at approximately 3:11 p.m. Investigators watched as DIAZ TEJEDA exited the vehicle and entered 322 Blue Hill Avenue.

**Delivery of Additional Payment to DIAZ TEJEDA on June 13, 2022**

28. On June 13, 2022, controlling investigators instructed the CS to contact DIAZ TEJEDA on the 0214 phone in order to pay DIAZ TEJEDA the outstanding $500 that the CS owed for the June 1, 2022, controlled purchase of 1,000 pills. The call was recorded but not monitored. DIAZ TEJEDA agreed for the CS to stop by 322 Blue Hill Avenue to drop off the $500.

29. On June 13, 2022, at approximately 4:00 p.m., investigators met with the CS at a neutral location and searched his/her car for contraband without finding any. Investigators equipped the CS with audio- and video-recording devices and gave him/her $500 in official authorized funds. Investigators instructed the CS to go to 322 Blue Hill Avenue to pay the $500 to DIAZ TEJEDA.

30. At approximately 4:27 p.m., the CS sent a WhatsApp text message to the 0214 phone asking, "what number blue hill." DIAZ TEJEDA responded "322." The CS wrote that he would be there in "2 minutes" and DIAZ TEJEDA responded, "ok brother."

31. At approximately 4:30 p.m., investigators saw (and the CS's video confirmed) DIAZ TEJEDA approach the CS as the CS arrived at the front of 322 Blue Hill Avenue. The two went upstairs to DIAZ TEJEDA's apartment. The CS gave the $500 (as the video shows) to DIAZ TEJEDA. DIAZ TEJEDA then counted the money. The CS then exited 322 Blue Hill Avenue.

**Agreement to Buy 4,000 Additional Fentanyl Pills from DIAZ TEJEDA and Seizure of Pills from 322 Blue Hill Avenue on July 6, 2022**

32. Based on the above facts, on June 30, 2022, the Honorable Judith G. Dein, U.S. Magistrate Judge for the District of Massachusetts, signed warrants authorizing: (1) a search of the residence of DIAZ TEJEDA located at 322 Blue Hill Avenue, Apartment 3, Boston, MA 02121; (2) precise-location information about the location of the 0214 phone; (3) use of an electronic investigative technique to determine the location of the 0214 phone; and (4) DEA agents and investigators to surreptitiously install, monitor, repair, replace, and use a real-time Global Positioning System mobile tracking device for 45 days on the Acura. *See* M.J. Nos. 22-5221-JGD, 22-5222-JGD, 22-5223-JGD, 22-5224-JGD (under seal).

33. On July 5, 2022, at the direction of controlling investigators, the CS contacted DIAZ TEJEDA in a recorded call about buying an additional 5,000 fentanyl pills. DIAZ TEJEDA stated in substance that he would look into it and contact the CS again. Approximately 20-30 minutes later, DIAZ TEJEDA contacted the CS and told him/her that DIAZ TEJEDA could provide 4,000 pills. Over the course of that day, the two made plans to meet the next day, July 6, 2022.

34. On July 6, 2022, DIAZ TEJEDA and the CS confirmed a meeting at 322 Blue Hill Avenue at approximately 2:00 p.m. Due to traffic, the meeting was delayed. At approximately 2:24 p.m., controlling investigators met with the CS at a neutral location. Investigators equipped the CS with audio- and video-recording equipment and searched him/her for contraband with negative results. Other investigators had set up surveillance at 322 Blue Hill Avenue.

35. At approximately 2:45 p.m., the CS arrived at 322 Blue Hill Avenue. As investigators watched, DIAZ TEJEDA greeted the CS in front of 322 Blue Hill Avenue and

opened the front door. At that point, investigators arrested DIAZ TEJEDA in the foyer.

36. Following his arrest, investigators executed the search warrant for Apartment 3 of 322 Blue Hill Avenue. No other people were in the apartment. On a chair in the kitchen area was a trash-type bag containing four clear bags. Each of the four bags contained additional bags with blue pills, consistent with each containing 1,000 pills (subject to official count). The total weight of the pills was approximately 513 grams. In my training and experience the pills, depicted below, appeared to be the same fentanyl pills that investigators previously bought from DIAZ TEJEDA. Investigators also seized approximately $1,500-1,800 from DIAZ TEJEDA (subject to official count).



37. After investigators gave DIAZ TEJEDA his *Miranda* warnings, DIAZ TEJEDA

claimed that the 4,000 pills did not belong to him and had been dropped off earlier by another man.

## CONCLUSION

38. Based on the information set forth above, probable cause exists to believe that DIAZ TEJEDA violated 21 U.S.C. § 846, conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl.

Respectfully submitted,

*Steven Galbadis*
Steven Galbadis
Special Agent
Drug Enforcement Administration

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on July 7, 2022

*Judith Gail Dein*
Hon. Judith G. Dein
United States Magistrate Judge